BLOOSKY INTERACTIVE, LLC
TIFFANY ANN KAHNEN, STATE BAR NO. 254399
9 Pasteur, Suite 100
Irvine, CA  92618
Telephone:  (866) 637-7220
Facsimile:  (888) 465-7166

Attorney for Plaintiff
Bloosky Interactive, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLOOSKY INTERACTIVE, LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>VIABLE MARKETING CORP. dba VIEW MARKETING, a Florida Corporation; CHAD ELIE, an individual; DJ KILGORE, an individual; LITLE & CO., LLC, a Massachusetts limited liability company; WELLS FARGO BANK, N.A., a California corporation, and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO. SACV10-00400 AG (MLGx)<br><br>**PLAINTIFF BLOOSKY INTERACTIVE'S OPPOSITION TO DEFENDANT DAVID J. KILGORE'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(2)**<br><br>Date: May 10, 2010<br>Time: 10:00 a.m.<br>Dept: 10D<br>Place: 411 West 4th Street<br>      Santa Ana, CA<br><br>[Declarations of Chris Pothier and Tiffany A. Kahnen filed under separate cover concurrently herewith] |

PLEASE  TAKE  NOTICE  THAT  Plaintiff,  Bloosky  Interactive,  LLC

(herein "Bloosky"), hereby responds to the Motion to Dismiss Defendant David J.

Kilgore (herein "Kilgore") Pursuant to Rule 12(b)(2) as follows:

///

# Table of Contents

I. INTRODUCTION ............................................................................................4

II. RELEVANT HISTORY ................................................................................4

III. LEGAL ARGUMENT..................................................................................6

  A. Standard for the Court Exercising Jurisdiction Over Kilgore ................6

  B. Kilgore is Subject to General Jurisdiction in California Because his Commercial Activities on Behalf of Viable Existed on a Substantial, Continuous and Systematic Basis ................................................................7

  C. Kilgore is Subject to Specific Jurisdiction in California Because Viable, as his Alter Ego, has Purposefully Directed its Activities Toward Bloosky and Kilgore Controlled and Directly Participated in These Activities ........................................................................................................8

    1. Bloosky's Claim Arises From or out of Kilgore's Forum-Related Activities...........................................................................................11

    2. Kilgore Has Not Met His Burden to Demonstrate That the Exercise of Jurisdiction Is Unreasonable......................................................11

      a. Extent of Kilgore's Purposeful Interjection .......................................12

      b. Burden on Kilgore to Defend Himself in California .........................12

      c. Conflict With the Sovereignty of Florida ...........................................13

      d. Efficient Resolution of Controversy ...................................................13

      e. Importance of California to Bloosky's Interest in Convenient and Effective Relief...................................................................................13

      f. Existence of an Alternate Forum .........................................................14

  D. In the Alternative, the Court Should Allow Bloosky to Conduct Jurisdictional Discovery...............................................................................14

IV. BLOOSKY'S REFUSAL TO VOLUNTARILY DISMISS KILGORE..15

V. CONCLUSION ..............................................................................................15

1

## Table of Authorities

2

**Cases**

3    Ballard v Savage, 65 F.3d 1495 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

4    Bechman v. Thompson, 4 Cal.App.4th 481 . . . . . . . . . . . . . . . . . . . . . . . .  13

5    Brayton Purcell LLP v. Recordon & Recordon, 575 F.3d 981 . . . . . . . . . . . .  6

6    Burger King Corp. v. Rudzewicz, 471 U S 462 . . . . . . . . . . . . . . . . . . . . .  10

7    Cornelison v. Chaney, 16 C 3d 143 . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

8    Harris Rutsky & Co. Ins. Serv., Inc. v Bell & Clements Ltd., 328 F ,3d 1122 .  12

9    International Shoe Co., Washington, 326 US. 310, 316 (1945) . . . . . . . . . . .  5

10   Lake v. Lake, 817 F.2d 1416 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

11   Milhon v. Superior Court, 169 Cal.App.3d 703 . . . . . . . . . . . . . . . . . . . . .  6

12   Panavision Int'l, L.P. v. Toeppen, 141 F,,3d 1316 . . . . . . . . . . . . . . . . . . . .  11

13   Pebble Beach Co. v. Caddy, 453 F.3d 1151 . . . . . . . . . . . . . . . . . . . . . . . .  5

14   Perkins v. Benguet Consolidated Mining Co., 342 US 437 . . . . . . . . . . . . . .  6

15   Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797 . . . . . . . . . . . . . .  5

16   Wolf Designs, Inc. v. DHR & Co., 322 F Supp 2d 1065 . . . . . . . . . . . . . . .  8

17

**Statutes**

18

19   Cal. Code Civ. Proc. § 410.10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Kilgore brings the instant motion to dismiss for lack of jurisdiction pursuant to Rule 12(b)(2).   Plaintiff Bloosky contends that this Court may exercise jurisdiction over Kilgore as Viable Marketing Corp. dba View Marketing (herein "Viable") is the alter-ego of Kilgore and that Kilgore directed and participated in the activities of Viable which form the basis for the instant action.

## II.   RELEVANT HISTORY

Bloosky operates an online advertising network that, inter alia, markets products and services for various advertisers through email marketing, search marketing, and/or display marketing, as required by the advertiser.  (Poth. Decl. ¶ 4.)   When Bloosky's marketing results in sales, registrations or other defined actions the advertiser pays Bloosky a fee for that action.  (*Id.*)

At all times relevant herein, Bloosky is and was a foreign or domestic California company with its headquarters in California.  (Poth. Decl. ¶ 5.)

Viable's business relationship with Bloosky dates to April 9, 2009, and continued until the inception of this action.   (Poth. Decl. ¶ 6.)   Viable signed agreements for advertising services (herein "the campaign") with Bloosky on April 9, 2009, and June 7, 2009.   (*Id,* Ex. 'A'.)   Over the course of Bloosky's relationship with Viable, Viable made numerous payments for advertising services to Bloosky.  (Id. ¶ 7.)

On June 7, 2009, Viable entered into an agreement with Bloosky for advertising services by signing an insertion order and the terms and conditions agreed to therein.  (Poth. Decl. ¶ 8.)   Viable requested that Bloosky provide email, search and display traffic for its "Google Exclusive" advertising campaign. (*Id.*; Ex. 'A'.)

On July 8, 2009, Kilgore executed a credit application with Bloosky on which he utilized his home address and personal social security number instead of

1 | Viable's employer identification number.  (Poth. Decl. ¶ 9, Ex. 'B'.)

2 |     Kilgore was a key party to the initial emails between executives of Bloosky

3 | and executives of Viable at the inception of the campaign, as well as many other

4 | communications in which significant corporate decisions were made throughout

5 | Viable's business relationship with Bloosky.  (Poth. Decl. ¶ 10, Ex. 'C'.)

6 | Kilgore's primary methods of communication with Bloosky employees at

7 | Bloosky headquarters included, but was not limited to, mail, facsimile, telephone,

8 | text message and electronic mail (e-mail) through the Internet. (Poth. Decl. ¶ 11.)

9 |     Over the course of the campaign, Kilgore communicated with Bloosky

10 | employees at California headquarters about a number of topics, including but not

11 | limited to, conversion rates for the campaign, billing and accounting issues,

12 | payment processing, setting terms and conditions for the campaign, developing a

13 | privacy policy and technical issues. (Poth. Decl. ¶ 12, Ex. 'D'.)

14 |     Following Viable's failure to pay for actions generated by Bloosky

15 | between August of 2009 and December of 2009, Bloosky filed a complaint

16 | against Viable, Chad Elie (herein "Elie") and Kilgore in the Orange County

17 | Superior Court, Central Justice Center, bearing case number 30-2009-00328685.

18 | (Kahnen Decl. ¶ 2.) Bloosky's complaint states causes of action for breach of

19 | contract, open book account, account stated and quantum meruit (Kahnen Decl.

20 | ¶ 3.)

21 |     According to the Florida Department of State, Division of Corporations,

22 | Kilgore has participated as an owner and manager in other online marketing

23 | business ventures with Elie dating back to 2003, including Enchanced Media

24 | Solutions, LLC and Justlikethat, LLC. (Kahnen Decl. ¶ 4, Ex. '1'.)

25 |     On March 9, 2010, counsel for Bloosky, Tiffany A. Kahnen (herein

26 | "Kahnen"), sent a letter to counsel for Viable, Sean O'Brien (herein "O'Brien")

27 | requesting documentation that would support his position that Kilgore had no

28 | alter-ego relationship with Viable. (Kahnen Decl. ¶ 5.) On March 25, 2010,

1 following receipt of the informal documents Kahnen received from O'Brien,
2 Kahnen emailed O'Brien and indicated that she would be telephoning him on
3 March 26, 2010, to discuss O'Brien's request to dismiss Kilgore, following a
4 review of the documents. (Kahnen Decl. ¶ 6.) On March 26, 2010, Kahnen
5 telephoned O'Brien and left him a voicemail stating that she was unable to agree
6 to dismiss Kilgore at that time. (Kahnen Decl. ¶ 7.)

7 **III.   ARGUMENT**

8 **A. Standard for the Court Exercising Jurisdiction Over Kilgore**

9 This Court may exercise jurisdiction over Kilgore if two criteria are met:
10 (1) personal jurisdiction is permitted by a long-arm statute, and (2) exercise of
11 that jurisdiction does not violate federal due process. *See* Pebble Beach Co. v.
12 Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006). Where, as here, there is no federal
13 long-arm statute governing personal jurisdiction, courts have applied the long-
14 arm statute of the forum state. *See* Schwarzenegger v. Fred Martin Motor Co.,
15 374 F.3d 797, 800 (9th Cir. 2004). Thus, California's long-arm statute applies,
16 which provides that "[a] court of this state may exercise jurisdiction on any basis
17 not inconsistent with the Constitution of this state or of the United States," Cal.
18 Code Civ. Proc. § 410.10. The Ninth Circuit has repeatedly recognized that
19 California's long-arm statute is "coextensive" with federal due process
20 requirements; as a result, the analysis for both requirements is identical. *See*
21 *Schwarzenegger*, 374 F.3d at 800-801.

22 Under both California's long-arm statute and federal due process principles,
23 the primary inquiry in determining whether personal jurisdiction exists is whether
24 the defendant has "minimum contacts" with the forum "such that the exercise of
25 jurisdiction does not offend traditional notions of fair play and substantial
26 justice," *Id.* at 801 (quoting International Shoe Co., Washington, 326 US. 310,
27 316 (1945)). On a motion to dismiss an action for lack of personal jurisdiction,
28 the plaintiff bears the burden of demonstrating the existence of personal

jurisdiction. "Although the burden is on the plaintiff to demonstrate that the court has jurisdiction over the defendant, in the absence of an evidentiary hearing, the plaintiff need only make 'a prima facie showing of jurisdictional facts to withstand the motion to dismiss.'" Brayton Purcell LLP v. Recordon & Recordon, 575 F.3d 981, (9th Cir. 2009) quoting *Pebble Beach*, 453 F.3d at 1154 "The court resolves all disputed facts in favor of the plaintiff," *Id.*; *See also Schwarzenegger*, 374 F.3d at 800 ("Conflicts between parties over statements in affidavits must be resolved in the plaintiff's favor.") Should a plaintiff fail to meet the burden of making a prima facie showing of jurisdictional facts sufficient to defeat a motion to dismiss, "[t]he plaintiff has the right to conduct discovery with regard to the issue of jurisdiction to develop the facts necessary to sustain this burden." Milhon v. Superior Court, 169 Cal.App.3d 703 (1985).

## B. Kilgore is Subject to General Jurisdiction in California Because his Commercial Activities on Behalf of Viable Existed on a Substantial, Continuous and Systematic Basis

Nonresidents whose commercial activities impact California on a "substantial, continuous and systematic" basis are subject to general (unlimited) jurisdiction. That is, a non-resident may be sued on any cause of action, even if the cause of action is unrelated to their activities within the state. *See* Perkins v. Benguet Consolidated Mining Co., 342 US 437, 446-447 (1952); Cornelison v. Chaney, 16 C.3d 143, 147 (1976).

Kilgore's contacts with California were extensive. Kilgore systematically coordinated, directed, approved and participated in an advertising campaign, which forms the basis for the instant litigation, with Bloosky which was targeted at, among others, California consumers. Bloosky is a California company with its primary place of business in California. Kilgore communicated with Bloosky employees at Bloosky headquarters in California by way of mail, facsimile, telephone, text message and electronic mail (e-mail) through the Internet about a

1 number of topics, including but not limited to, conversion rates for the campaign,
2 billing and accounting issues, payment processing, setting terms and conditions
3 for the campaign, developing a privacy policy and technical issues.

4  Kilgore was a key party to the initial emails between executives of Bloosky
5 and executives of Viable at the inception of the business relationship, as well as
6 many other communications in which significant corporate decisions were made
7 throughout Viable's business relationship with Bloosky. Over the course of the
8 campaign, Kilgore communicated with Bloosky employees about a number of
9 topics, including but not limited to, conversion rates for the campaign, billing and
10 accounting issues, payment processing, setting terms and conditions for the
11 campaign, developing a privacy policy and technical issues.

12  Kilgore's actions have impacted California, the forum state, on a
13 substantial, continuous and systematic basis and, therefore, support this Court's
14 exercise of general jurisdiction over him.

15  **C. Kilgore is Subject to Specific Jurisdiction in California Because**
16  **Viable, as his Alter Ego, has Purposefully Directed its Activities**
17  **Toward Bloosky and Kilgore Controlled and Directly Participated**
18  **in These Activities**

19  The Ninth Circuit applies a three-prong test to determine whether the
20 requisite "minimum contacts" exist to support specific jurisdiction:

21  "(1) The non-resident defendant must purposefully direct his activities or
22 consummate some transaction with the forum or resident thereof; or perform
23 some act by which he purposefully avails himself of the privilege of conducting
24 activities in the forum, thereby invoking the benefits and protections of its laws;

25  (2) the claim must be one which arises out of or relates to the defendant's
26 forum-related activities; and

27  (3) the exercise of jurisdiction must comport with fair play and substantial
28 justice, i.e. it must be reasonable." Schwarzenegger v. Fred Martin Motor Co.,

1  374 F.3d 797, 802 (9th Cir. 2004) (quoting <u>Lake v. Lake</u>, 817 F.2d 1416, 1421
2  (9th Cir. 1987)).

3      The plaintiff has the burden of establishing the first two prongs and, once
4  satisfied, the burden shifts to the defendant to establish the last prong. *See Pebble*
5  *Beach Co.*, 453 F.3d at 1155.

6      Kilgore contends that this Court cannot exercise jurisdiction over him
7  personally for his actions done on behalf of Viable because "jurisdiction over a
8  corporation does not extend to an individual associated with the corporation"
9  (Kilgore Mot. to Dismiss at 11.)

10      It is well established, however, that the corporate form may be ignored and
11  an individual may be held personally liable for acts taken on behalf of an entity
12  either: "(1) where the corporation is the agent or alter ego of the individual
13  defendant; or (2) by virtue of the individual's control of and direct participation in
14  the alleged activities." <u>Wolf Designs, Inc. v. DHR & Co.</u>, 322 F Supp 2d 1065,
15  1072 (C.D. Cal. 2004) (citations omitted). Indeed, the "central determination" to
16  decide whether an individual should be held personally liable for actions taken by
17  the corporate form is whether that individual "is a primary participant or 'guiding
18  spirit' in the alleged wrongdoing directed at California." *Id.*

19      In Wolf Designs, the defendant asserted that he was merely an employee of
20  the co-defendant corporation, but the Court found jurisdiction appropriate where
21  evidence existed of his authority to make significant corporate decisions and of
22  his participation in activities relevant to the claims raised by the plaintiff. *Wolf*
23  *Designs, Inc.*, 322 F. Supp 2d at 1073.

24      Similarly, in this case, Kilgore was allegedly only the chief technology
25  officer for Viable, yet possessed sufficient authority to coordinate, approve, direct
26  and participate in Viable's financial, technological and marketing-related
27  activities, which is evidenced by his personal execution of the credit application
28  of July 8, 2009, with Bloosky, on which he utilized his personal home address

1  and social security number instead of Viable's employer identification number.
2  By extending his personal credit on behalf of Viable to obtain corporate credit,
3  Kilgore inherently created a unity of interest and ownership between himself and
4  Viable.

5     Kilgore was a key party to the initial emails between executives of Bloosky
6  and executives of Viable at the inception of the campaign, as well as many other
7  communications in which significant corporate decisions were made throughout
8  Viable's business relationship with Bloosky.  Over the course of the campaign,
9  Kilgore communicated with Bloosky employees at California headquarters about
10  a number of topics, including but not limited to, conversion rates for the
11  campaign, billing and accounting issues, payment processing, setting terms and
12  conditions for the campaign, developing a privacy policy and technical issues.  In
13  demonstrating such a wide range of control and responsibility over company
14  affairs, Kilgore transcended those functions typical of a Chief Technology Officer
15  and assumed a much greater control and responsibility over the company's
16  corporate affairs, thereby operating Viable as his alter ego.

17     Moreover, as a patterned behavior Kilgore has participated as an owner and
18  manager in other online marketing business ventures with Elie, the Chief
19  Executive Officer of Viable, dating back to 2003 including Enchanced Media
20  Solutions, LLC and Justlikethat, LLC.

21     By these actions, Kilgore has purposefully availed himself of this forum.
22  *See Wolf Designs, Inc.*, 322 F.Supp 2d at 1073; see also Smith & Noble v. South
23  Jersey Vinyl, Inc., 1998 U.S. Dist. LEXIS 15930 (C.D. Cal.) (rejecting "fiduciary
24  shield" doctrine and conferring jurisdiction where defendant personally approved
25  company's marketing activities and company was small operation.)
26  ///
27  ///
28  ///

### 1. Bloosky's Claim Arises From or out of Kilgore's Forum-Related Activities

The second prong of the "minimum contacts" test for specific jurisdiction asks whether the "claim arises out of or results from the defendant's forum-related activities." Pebble Beach Co., 45.3 F.3d at 1155. The Ninth Circuit analyzes this prong under a "but for" test. Ballard v. Savage, 65 F.3d 1495, 1500 (9th Cir, 1995). Thus, the question is "but for [Kilgore's] contacts with California, would [Bloosky's] claims against [Kilgore] have arisen?" Id.

Stated differently, if Kilgore had not purposefully directed his commercial activities toward Bloosky, would Bloosky still have a claim against him? Kilgore coordinated, approved, directed and participated in Viable's financial, technological and marketing-related activities with a California company, Bloosky, which were directed, in part, at California consumers. Given that Bloosky would not have filed suit against Kilgore had he not engaged in such conduct, there is no dispute that this prong has been satisfied.

### 2. Kilgore Has Not Met His Burden to Demonstrate That the Exercise of Jurisdiction Is Unreasonable

Notwithstanding whether the other prongs of the "minimum contacts" test are satisfied, any exercise of specific jurisdiction over a defendant must be reasonable. See, e.g., Ballard, 65 F.3d at 1500. The burden to demonstrate the unreasonableness of the forum is on the defendant. See id. (noting that courts "presume that an otherwise valid exercise of specific jurisdiction is reasonable," and "[t]he burden of convincing us otherwise" falls on the defendant). To meet this burden, the defendant "must present a *compelling* case that the presence of some other considerations would render jurisdiction unreasonable." Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)) (emphasis in original). The Ninth Circuit weighs seven factors to determine whether the exercise of jurisdiction is reasonable:

1    "(1) the extent of a defendant's purposeful interjection; (2) the burden on
2    the defendant in defending in the forum; (3) the extent of conflict with the
3    sovereignty of the defendant's state; (4) the forum state's interest in
4    adjudicating the dispute; (5) the most efficient judicial resolution of the
5    controversy; (6) the importance of the forum to the plaintiff's interest in
6    convenient and effective relief; and (7) the existence of an alternative
7    forum." Panavision Int'l, L.P. v. Toeppen, 141 F,,3d 1316, 1323 (9th Cir.
8    1998).

9    No one factor is dispositive; the court must balance all seven. *Id.* Kilgore
10   has not presented a "compelling case" that demonstrates the exercise of
11   jurisdiction would be unreasonable.

12                 **a. Extent of Kilgore's Purposeful Interjection**

13   This factor determines the extent of the defendant's purposeful direction.
14   *See Panavision L.P.*, 141 F,3d at 1323 ("Even if there is sufficient interjection
15   into the state to satisfy the purposeful availment prong, the degree of interjection
16   is a factor to be weighed in assessing the overall reasonableness of jurisdiction
17   under the reasonableness prong") (citations and quotations omitted). Here, the
18   degree of Kilgore's interjection into California is considerable. Kilgore
19   coordinated, approved, directed and participated in Viable's financial,
20   technological and marketing-related activities with a California company,
21   Bloosky, which were directed, in part, at California consumers. Thus, for the
22   same reasons Bloosky contends that Kilgore purposefully directed his actions at
23   the forum, this factor weighs in favor of Bloosky.

24                 **b. Burden on Kilgore to Defend Himself in California**

25   Difficulty or inconvenience alone is not sufficient to overcome personal
26   jurisdiction. The courts have held that "unless the inconvenience is so great as to
27   constitute a deprivation of due process, it will not overcome clear justifications
28   for the exercise of personal jurisdiction" *Ballard*, 65 F.3d at 1501. Kilgore does

1  not contend within his moving papers that defending himself within California
2  would present a great inconvenience or undue burden, so this factor weighs in
3  favor of Bloosky.

### c. Conflict With the Sovereignty of Florida

5  Kilgore does not allege any conflict with the sovereignty of Florida, and, in
6  fact, none exists for purposes of determining the reasonableness of this Court
7  exercising jurisdiction over him personally. This factor therefore weighs in favor
8  of Bloosky.

### d. Efficient Resolution of Controversy

10  Efficient judicial resolution is possible in California. Once more, Kilgore
11  presents no discussion of this factor in his moving papers. Moreover, Kilgore has
12  failed to discuss the location of witnesses and evidence, which is the main issue
13  that courts examine to resolve this factor. *Panavision*, 141 F.3d at 1323. The
14  majority of witnesses and an overwhelming majority of the evidence, i.e.,
15  Bloosky's servers, are located in California. Thus, it would be more efficient for
16  a California court to resolve this dispute than a court in Florida. Moreover, this
17  Court is in a better position to apply California laws than a Florida court,
18  Accordingly, Kilgore has not met his burden, and this factor weighs in favor of
19  Bloosky.

### e. Importance of California to Bloosky's Interest in Convenient and Effective Relief

22  The Ninth Circuit repeatedly has recognized that this factor weighs in favor
23  of the plaintiff. Harris Rutsky & Co. Ins. Serv., Inc. v. Bell & Clements Ltd., 328
24  F.3d 1122, 1133 (9th Cir. 2003). It is obviously more convenient for a plaintiff,
25  who resides in the chosen forum, to litigate a case in that forum as opposed to an
26  alternate forum. This factor weighs in the favor of Bloosky.
27  ///
28  ///

**f.   Existence of an Alternate Forum**

Again, Kilgore fails to present any evidence or meet his burden of proof as to this factor.  Kilgore's moving papers simply state "Kilgore is a Florida resident whom was an employee of VMC…."  In any case, as the contract which forms the basis of Bloosky's complaint, and was agreed to by Kilgore, sets California as the proper forum for any dispute, the existence of an alternate forum is moot.

**D.     In the Alternative, the Court Should Allow Bloosky to Conduct Jurisdictional Discovery**

Should this Court determine that Bloosky has not quite met its burden of proof in demonstrating Kilgore's sufficient minimum contacts within California to justify imposition of personal jurisdiction, this Court should grant a continuance of its ruling on this motion in order that Bloosky may obtain additional evidence support such a finding.  Although the courts have held that a plaintiff is not entitled to a continuance if the plaintiff does not suggest that discovery is likely to produce evidence of sufficient California contacts, (*See* Bechman v. Thompson, 4 Cal.App.4th 481 (1992)), Bloosky maintains that such discovery will lead to further evidence of the contacts necessary to solidify personal jurisdiction over Kilgore.  Additionally, this Court has discretion in granting such a continuance.  *Id.*, at 487 (granting of a continuance for a discovery lies with the trial court, and the court's ruling will not be disturbed in absence of manifest abuse).

It is Bloosky's belief that such discovery, if necessary, would further reveal that Kilgore does, in fact, transact business in the state of California, and does so on a substantial, continuous and systematic basis, and that Viable is indeed Kilgore's alter-ego.  As Kilgore was the chief technology officer of Viable, yet involved in high level corporate decision-making, the closeness of the economic relationship between the Viable and Kilgore would need to be explored further.
///

1 | **IV.  BLOOSKY'S REFUSAL TO VOLUNTARILY DISMISS KILGORE**

2 |     Kilgore contends that Bloosky's refusal to voluntarily dismiss him

3 | following the informal exchange of information provided by his counsel, Sean

4 | O'Brien (herein "O'Brien"), unreasonable. (O'Brien Decl. ¶ 6, Ex. 'E'.)

5 |     On March 9, 2010, Kahnen sent a letter to counsel for Viable, Sean

6 | O'Brien (herein "O'Brien") requesting documentation that would support his

7 | position that Kilgore had no alter-ego relationship with Viable. On March 25,

8 | 2010, following receipt of the informal documents Kahnen received from

9 | O'Brien, Kahnen emailed O'Brien and indicated that she would be telephoning

10 | him on March 26, 2010, to discuss O'Brien's request to dismiss Kilgore,

11 | following a review of the documents. On March 26, 2010, Kahnen telephoned

12 | O'Brien and left him a voicemail stating that she was unable to agree to dismiss

13 | Kilgore at that time.

14 |     Short of formal discovery, including but not limited to a deposition,

15 | examination of corporate books, taxes and accounting paperwork, Kahnen could

16 | not make an accurate determination as to Kilgore's ownership interest in Viable

17 | or the profits he may have derived therefrom by way of any alter-ego relationship,

18 | and was therefore unwilling to dismiss Kilgore.

19 | **V.  CONCLUSION**

20 |     For all of the above reasons, Bloosky respectfully requests that this Court

21 | deny Kilgore's motion to dismiss for lack of personal jurisdiction. In the

22 | alternative, if this Court finds Bloosky has not met its burden, Bloosky

23 | respectfully requests that this Court allow Bloosky to conduct jurisdictional

24 | discovery into whether Kilgore was the "guiding spirit" behind Viable's activities

25 | directed at Bloosky.

26 | ///

27 | ///

28 |

1    Furthermore, Bloosky intends to file its Motion to Remand in opposition to

2 Defendants' Petition to Remove forthwith, making the instant motion untimely.

3 Dated:        April 19, 2010              BLOOSKY INTERACTIVE, LLC

4

5                                     By:

6                                          Tiffany Ann Kahnen
                                           Attorney for Plaintiff
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF BLOOSKY INTERACTIVE'S OPPOSITION TO DEFENDANT DAVID J. KILGORE'S MOTION TO
DISMISS PURSUANT TO RULE 12(b)(2)